**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**ROBERT EDWIN MAYS**                                                          **PLAINTIFF**

**V.**                          **CASE NO. 4:11CV00613 BD**

**MICHAEL J. ASTRUE, Commissioner,**
**Social Security Administration**                                  **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Robert Edwin Mays appeals the final decision of the Commissioner of the

Social Security Administration (the "Commissioner") denying his claim for Disability

Insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and

Supplemental Security income ("SSI") under Title XVI of the Act.  For reasons that

follow, the decision of the Commissioner is AFFIRMED.

**I.**     **Procedural History:**

On July 21, 2008, Mr. Mays protectively filed for SSI and DIB, alleging disability

beginning July 19, 2008, due to benign essential tremors, a pelvic fracture, and anterior

shoulder dislocation.  (Tr. 26, 50)  Mr. Mays's claims were denied initially and upon

reconsideration.  (Tr. 50-61)  At his request, an Administrative Law Judge ("ALJ")[1] held

a hearing on March 24, 2010, at which Mr. Mays appeared with his lawyer.  (Tr. 64-65,

---

[1] The Honorable Wendell C. Fowler.

1

22)  At the hearing, the ALJ heard testimony from Mr. Mays and a vocational expert ("VE").  (Tr.  22-45)

The ALJ issued a decision on June 14, 2010, finding that Mr. Mays was not disabled for purposes of the Act.  (Tr. 16-27)  On June 18, 2011, the Appeals Council denied Mr. Mays's request for review, making the ALJ's decision the Commissioner's final decision.  (Tr. 1-5)

## II.   Background:

Mr. Mays was forty-five years old at the time of the hearing.  (Tr. 26)  He had attended school through the twelfth grade and had passed his General Educational Development test.  (Tr. 26)  He had worked as a truck driver, army technician, vehicle mechanic, and hazardous-material identifier and handler.   (Tr. 27, 29)  At the time of the hearing, he lived with his five-year-old daughter and fourteen-year-old son, who were in his custody.  (Tr. 26, 38)

Mr. Mays had a motorcycle accident in March, 2007.  He was admitted to the hospital for several days and was diagnosed with a pelvic fracture, left shoulder dislocation, and history of alcohol abuse.  (Tr. 166)

At the hearing, Mr. Mays testified to pain in his pelvic area, hips, back, shoulders and knee.  (Tr. 35)  He testified that he could stand for 10-15 minutes and could sit for 10 minutes at a time.  (Tr. 36)   He stated that he could sweep and do little things around the house.  (Tr. 37)

2

III.    **Decision of the Administrative Law Judge**:

The ALJ followed the required five-step sequence[2] to determine that Mr. Mays had

not engaged in substantial gainful activity since his onset date and met insured status

requirements through December 31, 2012.  (Tr. 18)  He found that Mr. Mays had the

following severe impairments: history of motorcycle accident, left shoulder dislocation,

and pelvic fractures.  (Tr. 11)  The ALJ found that Mr. Mays did not have an impairment

or combination of impairments, however, that met or equaled an impairment listed in 20

C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526,

416.920(d), 416.925, 416.926).  (Tr. 12)

The ALJ determined that Mr. Mays had the residual functional capacity to perform

light work except he could not perform any overhead work and could not climb or squat.[3]

(Tr. 12)  The ALJ concluded that Mr. Mays could not perform his past relevant work.

(Tr. 15)  Relying on the testimony of the VE, he found, however, that Mr. Mays had the

---

[2]When performing the five-step analysis, and ALJ determines: (1) whether the
claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a
severe impairment; (3) if so, whether the impairment (or combination of impairments)
met or equaled a listed impairment; (4) if not, whether the impairment (or combination of
impairments) prevented the claimant from performing past relevant work ; and (5) if so,
whether the impairment (or combination of impairments) prevented the claimant from
performing any other jobs available in significant numbers in the national economy. 20
C.F.R. §§ 404.1520(a)-(g) (2005), 416.920(a)-(g) (2005).

[3]Light work "involves lifting no more than 20 pounds at a time with frequent
lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 416.967(b).

residual functional capacity to perform jobs that exist in significant numbers in the

national economy, including the job of office helper.  (Tr. 16)

**IV.** **Analysis:**

    A.    *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether

there is substantial evidence in the record as a whole to support the decision.  *Boettcher v.*

*Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g).  Substantial evidence is

"less than a preponderance, but sufficient for reasonable minds to find it adequate to

support the decision."  *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir.

2005)).

In reviewing the record as a whole, the Court must consider both evidence that

detracts from the Commissioner's decision and evidence that supports the decision; but,

the decision cannot be reversed, "simply because some evidence may support the opposite

conclusion."  *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

    B.    *Treating Physician's Opinion*

Mr. Mays claims that the ALJ erred by rejecting the opinion of his treating

physician in determining his physical limitations and instead relied on his own

conclusions.   (#10 at p. 5)  A treating physician's opinion is given controlling weight if

that opinion is well supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in the record.  *Ellis*

*v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005).

On March 20, 2008, Mr. Mays was examined by Johannes Gruenwald, M.D., his

orthopaedic surgeon.  Notes from the visit indicate that Dr. Gruenwald had not seen Mr.

Mays in eight or nine months and that Mr. Mays had returned to Dr. Gruenwald to have

disability paperwork completed for the National Guard.  (Tr. 179)

At the visit, Mr. Mays reported that he was feeling better since his last visit, but

was still having "some pain on some days, but he has learned to live with it."  (Tr. 179)

On physical examination, Dr. Gruenwald noted that Mr. Mays exhibited limitation on left

upper extremity forward flexion and abduction.  (Tr. 179)  He had internal rotation to

approximately L5, external rotation to about 30 degrees on the left, significant weakness

of the left supraspinatus and subscapularis muscles on the push-off and drop-thumb test.

Dr. Guenwald noted that Mr. Mays was neurovascularly intact distally to the left hand.

(Tr. 179)  He noted that Mr. Mays had done physical therapy but was not currently

attending physical therapy.  (Tr. 179)  Dr. Gruenwald assessed that Mr. Mays had reached

maximum medical improvement and instructed him to return to the clinic on an "as

needed" basis.  (Tr. 179)

The record includes a Physician's Recommendation completed by Dr. Gruenwald

after his examination of Mr. Mays on March 20, 2008. (Tr. 171)  In the recommendation,

Dr. Gruenwald wrote that Mr. Mays was limited to lifting no more than twenty pounds,

could not engage in physical activity requiring sprints or in overhead activity.  (Tr. 171)

He noted that Mr. Mays could not run but could do a 2.5 mile walk.  (Tr. 171)  He stated

that these limitations were permanent.  (Tr. 171)

On May 30, 2007, Aniel House, M.D., Mr. Mays's primary care physician, wrote

that Mr. Mays was making "good progress toward a complete recovery" from his

motorcycle accident injuries, and that she expected him to return to limited-duty work on

June 28, 2007.   On November 12, 2007, Dr. House wrote a letter stating that Mr. Mays

was fit for light duty.  (Tr. 174)  On February 20, 2008, Dr. House wrote a letter

describing Mr. Mays's physical condition.  She stated that his tremor was "stable" and

that he continued to have some limitation of motion to his left shoulder, as well as pelvic

discomfort.  (Tr. 172)

Jim Takach, M.D., a state agency physician, reviewed Mr. Mays's medical records

on August 12, 2008, and concluded that Mr. Mays could perform light work with the

added restriction of no overhead pushing or pulling with his left upper extremity.  (Tr.

185)  On September 22, 2008, Bill F. Payne, M.D., also reviewed the medical evidence

and agreed with Dr. Takach's assessment.  (Tr. 194)

The ALJ did not err in his assessment of Dr. Gruenwald's opinion.  He noted Dr.

Gruenwald found that Mr. Mays had limited range of motion in his left shoulder, but also

that he could perform what amounts to light work under the regulations.  (Tr. 15)  The

ALJ accounted for the limited range of motion noted by Dr. Gruenwald by eliminating

any overhead work.  The ALJ gave Dr. Gruenwald's opinion significant weight, and his opinion, along with the other evidence in the record, provides substantial evidence supporting the ALJ's residual functional capacity ("RFC") finding.[4]

C.    *Credibility*

Mr. Mays claims that the ALJ erred in his assessment of his credibility.  When assessing credibility, an ALJ must consider a claimant's daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions.  *Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).  Other factors to be considered are the claimant's work history and whether there is objective medical evidence to support the claimant's subjective complaints.  *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008).  An ALJ may not ignore a claimant's subjective complaints, however, solely because they are not supported by objective medical evidence.  *Id*.

An ALJ is not required to discuss each *Polaski* factor as long as he or she acknowledges and considers the relevant factors before discounting a claimant's

---

[4] Mr. Mays suggests that if the ALJ thought the record was incomplete, he should have sought an opinion from the treating physicians.  There is no indication, however, that the ALJ thought the record was incomplete, and an ALJ is required to recontact a treating physician only when the evidence is inadequate to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1512(e).  Mr. Mays even agrees that seeking additional opinion from the treating physicians was not necessary in this case.  (#10 at p. 12)

subjective complaints.  *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009).  So long as the ALJ "explicitly discredits a claimant's testimony and gives a good reason for doing so," the court should defer to the ALJ's credibility determination in assessing complaints of disabling pain.  *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010) (quotation and citation omitted).

Here, the ALJ evaluated Mr. Mays's subjective allegations under the guidelines set forth in *Polaski*, Social Security Ruling 96-7p, and other relevant authority.  The ALJ found that Mr. Mays's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent that they were inconsistent with the RFC.  (Tr. 14-15)

In making this determination, the ALJ first considered the medication that Mr. Mays took, Tramadol.  The ALJ noted that Mr. Mays testified that the medication made his pain tolerable, but had the side-effect of making him feel "weird."   See *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (when an impairment can be controlled by treatment, it cannot be considered disabling).  Mr. Mays also testified that medication more or less controlled his tremors.  (Tr. 37)

Next, the ALJ noted that Mr. Mays testified that his activities of daily living included some housework, taking care of his two children, and occasionally grocery shopping when he was not medicated.  He also noted that in an Adult Function Report, Mr. Mays reported that he was able to feed himself, shave without difficulty, prepare

meals, mow his lawn with a riding lawn mower, drive a car, go outside his home alone, pay bills, count change, handle a savings account, and use a checkbook.  (Tr. 13)

The ALJ next considered the medical records.  He discussed treatment records from Dr. House and Dr. Gruenwald.  He noted that Mr. Mays's physicians had treated him conservatively with medication management and physical therapy, and that no physician had recommended additional surgery.  (Tr. 14)

In his brief, Mr. Mays states that his "diagnosis is well established clinically and is consistent with his testimony regarding limitations and pain."  Under the regulations, however, the ALJ must assess residual functional capacity by considering whether a claimant's pain causes limitation or restriction on what he can do in a work setting.  20 C.F.R. § 404.1545(a)(1), 416.945(a).  A diagnosis does not end the inquiry.

Here, as the ALJ discussed, there is a lack of objective medical evidence to support Mr. Mays's complaints of disabling pain.  Mr. Mays had not sought additional physical therapy or surgical intervention for his alleged pain since the months following his motorcycle accident.  According to the medical records, from June, 2007, to November, 2008, Mr. Mays did not seek medication for pain.  (Tr. 206)  He had not been referred to a pain specialist.  The ALJ may consider the lack of objective medical evidence as one factor when assessing credibility.  See *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) (lack of objective medical evidence is relevant to credibility).

Mr. Mays claims that the ALJ did not consider his work record. This argument fails for two reasons. First, the ALJ is not required to explicitly discuss each *Polaski* factor. *Goff v. Barnhart*, 421 F.3d 785, 791-92 (8th Cir. 2005) (quotation and citation omitted). Second, here the ALJ did discuss Mr. Mays's work record. In his opinion, the ALJ noted that Mr. Mays had worked as an army technician and testified that he had lost his job because he could not pass a physical examination. (Tr. 13) Additionally, at the hearing, the ALJ specifically noted Mr. Mays's work history. (Tr. 40)

Mr. Mays also claims the ALJ did not properly consider the third-party witness statements in the record. It is true that the ALJ did not specifically discuss the witness statements, but in his opinion, the ALJ stated repeatedly that in making his decision he had carefully considered all of the evidence in the entire record. (Tr. 9, 11, 12, 14) Further, an ALJ's failure to discuss a third-party witness statement is not the type of error that requires remand. See *Buckner v. Astrue*, 646 F.3d 549, 557 (8th Cir. 2011).

Finally, Mr. Mays claims that the ALJ erred by relying on activities of daily living as a basis for denying benefits. This argument lacks merit. Here, the ALJ considered Mr. Mays's activities of daily living, as he was required to do, as part of his credibility analysis. The record reflects that Mr. Mays took care of his two children and animals, took care of his own personal needs, sometimes cooked meals, could mow on the riding lawn mower, could drive a car, shopped for groceries, watched television, and visited with family and friends. (Tr. 123, 125-127) While Mr. Mays now claims that his

activities are more restricted, the ALJ was not required to accept all subjective complaints at face value.  Here, the ALJ properly analyzed Mr. Mays's complaints of pain, and there is substantial evidence to support the credibility determination in this case.

## V.    **Conclusion:**

Substantial evidence in the record supports the Commissioner's decision that Mr. Mays was not disabled under the Act, because he retained the functional capacity to perform jobs that existed in significant numbers in the national economy during the period he alleged that he was unable to work due to disabilities.

Therefore, the Commissioner's decision is AFFIRMED, and this appeal is DISMISSED, with prejudice, this 6th day of July, 2012.

_____
UNITED STATES MAGISTRATE JUDGE